**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

KENISHA TORRES VICENTE,

        Plaintiff,

v.                                                          Case No:   6:22-cv-01057-LHP

COMMISSIONER OF SOCIAL
SECURITY

        Defendant.

## MEMORANDUM OF DECISION[1]

Kenisha Torres Vicente ("Claimant") appeals the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income. Doc. No. 1. Claimant raises two arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed and remanded for further administrative proceedings. Doc. Nos. 16, 25. The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and that the final decision of the Commissioner should be affirmed. Doc. No. 24. For the

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Doc. Nos. 19, 22–23.

reasons stated herein, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of 42 U.S.C. § 405(g).

## I.     PROCEDURAL HISTORY.

On April 6, 2020,[2] Claimant filed an application for supplemental security income, alleging a disability onset date of October 14, 2001.  R. 21, 83, 246–54.  Claimant's application was denied initially and again upon reconsideration, and she requested a hearing before an ALJ.  R. 109, 120, 146.  A hearing was held before the ALJ on September 9, 2021.  R. 21, 35–60.  The hearing participants included Claimant, who was represented by counsel, a Spanish interpreter, Claimant's mother, and a vocational expert ("VE").  *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.  R. 15–30.  Claimant sought review of the ALJ's decision by the Appeals Council, which the Appeals Council denied on April 13, 2022.  R. 1–7, 242.  Claimant now seeks review of the final decision of the Commissioner by this Court.  Doc. No. 1.

---

[2] The "Application Summary for Supplemental Security Income" states that Claimant applied for benefits on April 13, 2020, but according to the ALJ's decision, and a "Disability Determination and Transmittal," Claimant filed the application on April 6, 2020.  *Compare* R. 21, 83, *with* R. 246.  For consistency, and because the application date is not dispositive of this appeal (as under either date the same set of regulations applies), the Court utilizes the application date stated by the ALJ:  April 6, 2020.

## II.     THE ALJ'S DECISION.[3]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 416.920(a).  R. 21–30.[4]  The ALJ first found that Claimant had not engaged in substantial gainful activity since April 6, 2020, the application date.  R. 23.  The ALJ further found that Claimant suffered from the following severe impairments: intellectual disability, major depressive disorder, anxiety, and schizophrenia.  *Id.*[5]  But, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 24–26.

---

[3] Upon a review of the record, counsel for the parties have adequately stated the pertinent facts of record.  Doc. Nos. 16, 24–25.  Accordingly, the Court adopts those facts as stated by the parties by reference without restating them in entirety herein.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

[5] The ALJ also found that Claimant's headaches were a non-severe impairment, and that a diagnosis of ADHD had previously been ruled out.  R. 23.

Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> Apply commonsense understanding to carry out simple one or two-step instructions and to perform only simple tasks for 2-hour periods over 8-hour workdays. She can occasionally interact with coworkers, supervisors but never with the public, and will be able to adapt to minimal changes at the workplace.

R. 26.

After considering Claimant's age (younger individual), education, work experience (Claimant had no past relevant work), and RFC, as well as the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, representative occupations to include farm worker II, industrial cleaner, sweeper, and window washer. R. 29–30. Accordingly, the ALJ concluded that Claimant had not been under a disability since the April 6, 2020 application date. R. 30.

### III.  STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by

substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV.  ANALYSIS.**

In her opening brief, Claimant raises two issues: (1) the ALJ erred in her consideration of the medical opinion of consultative examining psychologist Magaly Delgado, Psy.D.; and (2) the ALJ failed to properly evaluate Claimant's intellectual disorder under Listing 12.05B. Doc. No. 16, at 12–22. The Court finds the first assignment of error dispositive of this appeal.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources. 20 C.F.R. § 416.945(a)(3).

Claimant filed her application for supplemental security income on April 6, 2020. R. 21, 83, 246–54. Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.[6] The most important factors we consider when we evaluate the

---

[6] Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of the treatment relationship; frequency of examinations; purpose of the treatment relationship; extent of the treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(c).

> persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).   We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c(a).   The regulations further state that because supportability and consistency are the most important factors under consideration, the Commissioner "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision."   *Id.* § 416.920c(b)(2).   "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record."   *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).

Pursuant to the new regulations, the Commissioner is not required to articulate how she "considered each medical opinion or prior administrative medical finding from one medical source individually."   20 C.F.R. § 416.920c(b)(1).   "Courts have found that '[o]ther than articulating [her] consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how [she] considered any other factor in determining persuasiveness.'"

*Bell v. Comm'r of Soc. Sec.*, No. 6:20-cv-1923-DCI, 2021 WL 5163222, at *2 (M.D. Fla. Nov. 5, 2021) (quoting *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019)). *See also Delaney v. Comm'r of Soc. Sec.*, No. 6:20-cv-2398-DCI, 2022 WL 61178, at *2 (M.D. Fla. Jan. 6, 2022) (noting that the ALJ may, but is not required to, explain how he or she considered the remaining factors besides supportability and consistency).

On September 16, 2015, and August 13, 2020, respectively, Dr. Delgado conducted General Clinical Evaluations with Mental Status examinations and Learning Disability Evaluations, at the request of the Department of Disability Determinations, to help determine Claimant's eligibility for disability benefits. R. 408–13, 562–66. On September 16, 2015, the mental status examination revealed that Claimant was moderately cooperative with the evaluation, with a neutral mood and broad affect. R. 410. Her speech "was of a slow rate, normal volume, with some difficulty in articulation[,]" while her thought processes "were slow, logical and coherent, and thought content was appropriate to mood and circumstances." R. 410. She was oriented to person with fair short-term memory processes, attention, and concentration, and limited judgment and insight based on her age. *Id.*

In addition to the mental status examination, Dr. Delgado administered the Wechsler Intelligence Scale for Children – Fourth Edition Spanish and the Bateria –

III Woodcock-Muñoz tests. *Id.* However, the test results were considered invalid because Claimant "did not put forth her best effort throughout testing[,]" and the results were "inconsistent with records and educational history." *Id.* Dr. Delgado diagnosed Claimant with unspecified communication disorder, Specific Learning Disorder with impairment in math, reading, and written expression, and ADHD. R. 413. She opined that Claimant would need assistance managing her funds based on her minor age, her social functioning appeared fair based on reports of a lack of peer friendships, and her functional ability appeared moderately impaired based on her symptomology. *Id.*

On August 13, 2020, the mental status examination revealed that Claimant had fair eye contact, was "somewhat cooperative with the evaluation," exaggerated deficits, and had a slightly dysphoric mood, with congruent affect. R. 564. Speech was of a slowed rate, with low volume and clear articulation, her receptive and expressive language skills appeared fair to limited, and she was noted to have difficulty understanding questions. *Id.* Dr. Delgado found Claimant's thought processes to be slow and logical, with appropriate thought content to mood and circumstances, and no signs of psychosis. *Id.* Dr. Delgado additionally noted that Claimant was oriented to person with adequate attention and concentration, but poor short-term and remote memory, poor judgment, and limited insight. *Id.* Claimant's intelligence was estimated to "fall in an impaired range based on

developmental and educational history." *Id.*

Dr. Delgado administered two tests – the Test of Nonverbal Intelligence, Fourth Edition, and the Bateria – III Woodcock-Muñoz. R. 564. Claimant obtained an IQ standard score of 64, falling in the Very Poor (Extremely Low) range of intellectual ability. R. 565. But once again, Dr. Delgado noted that the test results were invalid because Claimant "did not appear to have put forth her best effort," and the scores were "an underestimate of [Claimant's] ability and skill level." R. 564. Based on educational records, her mother's reports, Claimant's own reports, test results, and clinical observations, Dr. Delgado diagnosed mild intellectual disability and ADHD. R. 566. Dr. Delgado opined that should Claimant be entitled to benefits, "she would need assistance in managing her funds based on her limited intellectual functioning[,] [s]ocial functioning appear[ed] limited based on reported [sic] of few peer relationships[,] [and] [f]unctional ability appear[ed] moderately/severely impaired based on her symptomatology." *Id.*

In the decision, the ALJ discussed Dr. Delgado's consultative psychological examinations as follows:

> The claimant presented for consultative psychological examination with Delgado in 2015 and 2020. In 2015, she was moderately cooperative. Speech was slow with some difficulty in articulation. She reported she forgot her age, despite having told the examiner her correct age at the beginning of the evaluation. Attention and concentration were fair. Her performance on testing was inconsistent, as she could not answer simple items, but was able to answer more difficult items. She did not put forth her best efforts and results were

> invalid (Exhibit 3F).
>
> In 2020, the claimant reported she completed twelfth grade and will remain in the ESE program until age 21. She earned As and Bs last year in the program. She denied auditory or visual hallucinations. She denied suicidal or homicidal ideation. Her mother denied that the claimant needed assistance with dressing, bathing or grooming. She reported she could not count money or go shopping independently. During the day she participates in virtual school and watches YouTube and Netflix She has a good relationship with family. Grooming and hygiene were adequate. She was somewhat cooperative. She exaggerated deficits. Receptive and expressive language skills appeared fair to limited. Thought process was slow but logical. No signs of psychosis. Short-term memory appeared poor. She was noted to have intentionally mispronounce three words when asked to repeat them. Attention and concentration were adequate. Intelligence was estimated to fall in the impaired range. Intelligence testing was invalid as the claimant did not appear to have put forth her best effort. Her total IQ score of 64 placed her in the extremely low range. She performed worse than her 2015 test (Exhibit 10F; 11F). As reported above, in the 2015 test the claimant was able to state her name, age, birthday, mother's name, teacher's name, classmates' names and recent meals, and there was no severe short-term or long-term memory impairment (Exhibit 6F).

R. 27–28. As to Dr. Delgado's opinion regarding Claimant's functional limitations, the ALJ stated, *in toto*:

> As for medical opinion(s) and prior administrative medical finding(s), I cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. I have fully considered the medical opinions and prior administrative medical findings as follows: Consultative examiner, Dr. Delgado, opined the claimant would need assistance in managing funds and further opined social functioning was limited and functional ability was moderately to severely impaired based on symptomatology. This is not persuasive as the testing results were invalid as the claimant did not put forth her best effort (Exhibit 3F; 10F/11F).

R. 28. Thus, the ALJ discounted Dr. Delgado's opinion based solely on the invalidity of the test results.

Claimant argues that the "ALJ mischaracterized Dr. Delgado's findings by attempting to conflate [the] tests with the overall examination, when they merely represented evaluations of Plaintiff's intellect." Doc. No. 16, at 14. Claimant contends that while Dr. Delgado indicated that the tests administered were invalid, her "objective findings supported substantial limitations." *Id*. Claimant further contends that the ALJ conducted no consistency analysis, which "was alone error enough to warrant remand." *Id*. at 15.

On review, the Court agrees with Claimant that the ALJ erred by failing to adequately address the supportability and consistency factors. The ALJ's sole reason for discounting the entirety of Dr. Delgado's opinions was because "the testing results were invalid as the claimant did not put forth her best effort." R. 28. However, in addition to administering intelligence tests, Dr. Delgado conducted mental status examinations, and her opinion that Claimant's "[f]unctional ability appeare[d] moderately/severely impaired" was based on Claimant's symptomology. R. 566. As noted above, in August 2020, Dr. Delgado stated that Claimant's short-term memory processes and remote memory were poor, her judgment was poor, insight was limited, and her intelligence was estimated to fall in an impaired range based on Claimant's developmental and educational history.

R. 564. Thus, while the ALJ properly rejected the test results as invalid, her decision to reject the entirety of Dr. Delgado's opinion is not supported by substantial evidence. And even assuming that the ALJ's rejection of Dr. Delgado's opinion based on invalid test results fulfilled her obligation to "explain" the supportability factor, the ALJ completely failed to address the consistency factor and whether Dr. Delgado's opinion was inconsistent with the remainder of the record.

The Commissioner's arguments to the contrary are unpersuasive. In support of the ALJ's consideration of the supportability factor, the Commissioner argues that "while the ALJ did note that the intelligence testing was not valid, she also summarized other evidence from Dr. Delgado's evaluations supporting a finding that [Claimant] was not fully cooperative and did not put forth her best effort during the whole appointment." Doc. No. 24, at 7. Additionally, the Commissioner contends that "it would be reasonable for the ALJ to conclude that if [Claimant] did not put forth her best effort on the testing portion of the evaluation, the other portions of the evaluation might also be suspect." *Id*.

However, the ALJ did not provide any of these reasons for discounting Dr. Delgado's opinion, and the Court cannot accept the Commissioner's post-hoc analysis offering a rationale that the ALJ could have relied upon. *See Watkins v.*

*Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012)[7] ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'" (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984))); *Croce v. Acting Comm'r of Soc. Sec. Admin.*, No. 6:17-cv-87-Orl-MCR, 2018 WL 2296783, at *3 (M.D. Fla. May 21, 2018) ("[W]hile it is possible that substantial record evidence supported the ALJ's decision, it is not this Court's role to supply the reasoning for the decision or weigh the evidence" (citing *Dixon v. Astrue*, 312 F. App'x 226, 229 (11th Cir. 2009) (per curiam))).  "Rather, the Court must judge the propriety of the ALJ's decision based 'solely by the grounds invoked by the agency.'"  *Croce*, 2018 WL 2296783, at * 3 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

Similarly, in support of the ALJ's consideration of the consistency factor, the Commissioner argues that "while the ALJ may not have explicitly discussed Dr. Delgado's inconsistency with the record in her evaluation of his opinion, her discussion of the evidence as a whole demonstrates the inconsistency of his opinion."  Doc. No. 24, at 7.  The Commissioner points to the ALJ's discussion of evidence which purportedly supports the ALJ's RFC assessment and "shows why Dr. Delgado's opinion to the contrary was inconsistent with the evidence of record."  *Id*. at 8–13.  Additionally, citing to a case decided under the older version of the

---

[7] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* 11th Cir. R. 36-2.

regulations, the Commissioner argues that "[e]ven should the Court find there was any error on the ALJ's part in this regard, it would at most [sic] harmless because the ALJ's discussion of the evidence of record outlines the inconsistencies with Dr. Delgado's opinion of marked and extreme limitations." *Id.* at 8 (citing *Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 836–37 (11th Cir. 2018)).

Contrary to the Commissioner's argument, even if the ALJ adequately summarized the evidence in the record, the revised regulations required her to specifically address and "explain" both the supportability and consistency of Dr. Delgado's opinion in light of the evidence. *See* 20 C.F.R. § 416.920c(b)(2). *See also Pierson v. Comm'r of Soc. Sec.*, No. 6:19-cv-01515-RBD-DCI, 2020 WL 1957597, at *6 (M.D. Fla. Apr. 8, 2020) ("As an initial matter, the new regulations require an explanation, even if the ALJ (and the Commissioner) believe an explanation is superfluous."), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020); *Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021) ("[T]he ALJ cannot merely summarize the evidence, as a whole, and then conclude that [the medical] opinions are not consistent with the evidence as a whole. Rather, the ALJ must build a logical analytical bridge explaining what particular evidence undermined [the medical] opinions and why." (quoting *Michael v. Saul*, No. 2:20cv238, 2021 WL 1811736, at *11 (N.D. Ind. May 6, 2021))).

Nor can the Court conclude that the ALJ's failure to properly consider Dr. Delgado's opinion was harmless, especially where, as the Commissioner points out, the opined limitations appear to contradict the ALJ's RFC assessment and other evidence in the record. *See Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) ("[W]hen there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." (citation omitted)); *Sowards v. Comm'r of Soc. Sec.*, No. 6:13-cv-76-Orl-GJK, 2014 WL 688053, at *3 (M.D. Fla. Feb. 21, 2014) ("It is for the ALJ, not the Court, to resolve conflicts in the evidence, especially the medical opinion evidence."). Indeed, the Court "cannot say that the failure to address [the medical] opinion was harmless without re-weighing the evidence and engaging in conjecture that invades the province of the ALJ." *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 592 (11th Cir. 2006) (per curiam).

Thus, because the ALJ did not apply the correct legal standards in evaluating Dr. Delgado's opinion, remand is necessary for the ALJ to properly consider the persuasiveness of Dr. Delgado's opinion based on the supportability and consistency factors, in accordance with 20 C.F.R. § 416.920c.

Because this issue requires remand, the Court declines to address Claimant's remaining argument, given that the ALJ will have to reweigh the evidence on remand and may reconsider the issues raised by Claimant. *See Diorio v. Heckler*,

721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (no need to analyze other issues when case must be reversed due to other dispositive errors).

**V. CONCLUSION.**

Based on the foregoing, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of 42 U.S.C. § 405(g).

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Claimant and against the Commissioner, and thereafter, to **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on April 10, 2023.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record